# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

WILLIAM MCGHEE,

  Plaintiff,

v.              No. 2:19-cv-1158-KWR-KRS

SECRETARY OF CORRECTIONS, *et al*,

  Defendants.

## MEMORANDUM OPINION AND ORDER

  **THIS MATTER** is before the Court on Plaintiff William McGhee's Prisoner Civil Rights Complaint (Doc. 1). Plaintiff is incarcerated, *pro se,* and proceeding *in forma pauperis*. He challenges the constitutionality of statewide prison lockdowns. Having reviewed the matter *sua sponte* under 28 U.S.C. § 1915(e), the Court will dismiss the Complaint but grant leave to amend.

## BACKGROUND[1]

  Plaintiff is incarcerated in the Lea County Correctional Facility (LCCF). (Doc. 1 at 1). He alleges that prior to June of 2016, the New Mexico Department of Corrections (NMDOC) required frequent lockdowns in state prisons. Plaintiff believes the lockdowns were implemented as part of a "sophisticated scheme to steal the inmate payroll." *Id.* at 4. The prisons operate on a skeleton crew during the lockdowns. *Id.* While the remaining prisoners were furloughed from their jobs, unidentified officials allegedly stole money earmarked for inmate payroll. *Id.* at 4-5. Plaintiff also contends that, in practice, the lockdowns only apply to private prisons. *Id.* at 5.

  In June 2016, another inmate notified the NMDOC, through counsel, that the lockdowns

---

[1] The background facts are taken from Plaintiff's complaint (Doc. 1). For the limited purpose of this ruling, the Court assumes Plaintiff's allegations are true.

are unconstitutional.  (Doc. 1 at 4).  The lockdowns stopped for a while, but they recently became more frequent.  *Id.* at 5-6.  On October 30, 2019, NMDOC implemented another statewide lockdown.  *Id.* at 7.  The lockdown was supposed to end on November 8, 2019.  *Id.*  It is not clear whether the lockdown extended beyond that date, or whether Plaintiff was further restricted based on misconduct.  At one point he alleges: "the pod restriction is designed to let us up from the lockdown slowly, [a]nd if we behave, we get to go back to normal."  *Id.*  Plaintiff goes on to complain that "no one was misbehaving.  It is all a facade," but fails to provide further detail.  *Id.* In any event, it appears the 2019 lockdown lasted for at least nine days.  During that time, Plaintiff was confined to his cell while officials searched other prisons and units.  *Id.* at 7.  All recreational and religious programs were cancelled, and Plaintiff was unable to attend a "Kairos reunion."  *Id.* at 8.  Kairos is a "non-denominational religious service."  *Id.*  It appears Plaintiff tried to file an emergency grievance but was unsuccessful.  *Id.* at 9.  He alleges the State amended NMSA § 33-2-10 ("Penitentiary; rules and regulations") in 2002, and that amendment made it more different to obtain emergency relief.  *Id.*  Plaintiff also finds it difficult to sue because NMDOC will not accept service on behalf of GEO Group, Inc. (GEO).  *Id.* at 3.

Construed liberally, the Complaint raises claims for due process violations, cruel and unusual punishment, violations of the free exercise clause, and violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA).  The Complaint names four Defendants: (1) NMDOC; (2) the New Mexico Secretary of Corrections; (3) GEO; and (4) LCCF Warden Santiestevan.  Plaintiff seeks a judgment declaring statewide lockdowns are generally unlawful; an injunction requiring the replacement of stolen funds; and at least $6,000 in damages.  He also asks the Court to amend NMSA § 33-2-10.  Plaintiff obtained leave to proceed *in forma pauperis*, and

the matter is ready for initial review.

## STANDARD OF REVIEW

The Court has discretion to dismiss an *in forma pauperis* complaint at any time if the action is frivolous, malicious, or fails to state a claim on which relief may be granted.  *See* 28 U.S.C. § 1915(b).  The Court may also dismiss a complaint *sua sponte* under Rule 12(b)(6) if "it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [plaintiff] an opportunity to amend [the] complaint would be futile."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (quotations omitted).  The plaintiff must frame a complaint that contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall,* 935 F.2d at 1110.  While *pro se* pleadings are judged by the same legal standards that apply to represented litigants, the Court can overlook the "failure to cite proper legal authority, … confusion of various legal theories, … poor syntax and sentence construction, or … unfamiliarity with pleading requirements."  *Id.* Further, *pro se* plaintiffs should ordinarily be given the opportunity to cure defects in the original complaint, unless amendment would be futile.  *Id.* at 1109.

## DISCUSSION

Plaintiff raises claims under 42 U.S.C. § 1983, the "remedial vehicle for [addressing the] violation of constitutional rights."  *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016).

"A cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir. 2000). The plaintiff must allege that each government official, through the official's own individual actions, has personally violated the Constitution. *See Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the constitutional violation. *See Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask,* 446 F.3d at 1046.

The Complaint here fails to describe how any person was involved in the alleged wrongdoing. NMDOC is "not [a] ... 'person' subject to suit under § 1983," *Blackburn v. Dep't of Corr.*, 172 F.3d 62 (10th Cir. 1999), and any official-capacity claim for damages against the Secretary of Corrections fails based on sovereign immunity. *Wood v. Milyard,* 414 Fed. App'x 103, 105 (10th Cir. 2011). To the extent Plaintiff seeks injunctive relief against the Secretary of Corrections, the alleged facts provide no basis to end all statewide lockdowns or order the replacement of funds. GEO and Warden Santiestevan can be liable under § 1983, but only if those Defendants "promulgated … or possessed responsibility for the continued operation of a policy that ... caused the complained of constitutional harm." *Moya v. Garcia*, 895 F.3d 1229 (10th Cir. 2018) (addressing prison supervisors). *See also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (applying the same standard to corporate defendants). Plaintiff does not contend the constitutional violations are traceable to any policy by GEO or Santiestevan. The Complaint therefore fails to state a claim against any named Defendant.

Even aside from these defects, the alleged facts do not satisfy the applicable pleading standards. Plaintiff alleges prison officials violated his due process rights, the Eighth Amendment's prohibition on cruel and unusual punishment, and his religious freedoms. The Court will address

each claim below.

### A.  The Complaint Fails to State a Due Process Claim

Plaintiff primarily argues prison officials violated his due process rights by stealing money during the lockdowns.  This accusation is devoid of detail and borders on factually frivolous.  *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (Section 1915 "accords judges … the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions … describe[e] fantastic or delusional scenarios").  There is no indication any money is missing from Plaintiff's inmate account, nor does he explain how he knows about a large-scale fraudulent scheme to defraud taxpayers.  To the extent Plaintiff raises a due process claim based on NMDOC's refusal to accept service for GEO, this argument also fails.  Prison officials do not violate the constitution by requiring *pro se* parties to follow the rules of procedure.  *See Hendrix v. Employer's Reinsurance Corp.*, 26 Fed. App'x 873, 874 (10th Cir. 2002) ("*Pro se* litigants must follow the rules of procedure") (citing *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).

The Court also finds no due process violation based on the 2002 amendment to NMSA § 33-2-10.  The current version of that statute does not - as Plaintiff contends - bar emergency grievances.  It states:

> The corrections division [corrections department] shall make such rules and regulations for the government, discipline and police of the penitentiary, and for the punishment of the prisoners confined therein, not inconsistent with the law, as it may deem expedient, and until such regulations are made, the regulations now in force shall continue in force.  The division [department] shall exercise a general superintendence and control over the government and discipline of the penitentiary, cause such rules and regulations as it may prescribe for the government and discipline of the penitentiary to be printed and placed in some conspicuous place therein, and shall visit the said penitentiary once in each month, and inspect the same.

NMSA § 33-2-10.  The Court has no authority to return this language "to its state before 2002," as

Plaintiff requests.  (Doc. 1 at 11).  And, if Plaintiff intends to argue that prison officials mishandled his emergency grievance, such issue does "not implicate any due-process rights."  *Johnson v. Richins*, 438 Fed. Appx. 647, 649 (10th Cir. 2011).  *See also Sharrock v. Department of Corrections*, 991 F.2d 806 (10th Cir. 1993) ("[B]ecause state prison grievance procedures do not implicate federally protected rights, plaintiff's complaints about that process may not be the basis for a § 1983 complaint").  Accordingly, the Court will dismiss all due process claims.

**B.  The Complaint Fails State an Eighth Amendment Claim**

The Eighth Amendment requires prison officials to provide humane conditions of confinement by ensuring inmates receive the "minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).  To demonstrate prison conditions amount to cruel and unusual punishment, the alleged deprivation must be objectively serious, and the prison official must "have a sufficiently culpable state of mind."  *Craig v. Eberly,* 164 F.3d 490, 495 (10th Cir.1998).  Conditions are objectively serious when they threaten the inmate's safety or "lead to deprivations of essential food, medical care, … [or] sanitation."  *Rhodes,* 452 U.S. at 348.  "[T]he length of exposure to the conditions is often of prime importance" in Eighth Amendment cases. *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001).  "As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases."  *Id.*

The Complaint contains a passing reference to cruel and unusual punishment, along with an allegation that prison officials "locked [Plaintiff] down for days" with no recreation or activities. (Doc. 1 at 7).  Plaintiff fails to allege any person had a subjectively culpable state of mind, nor does he contend he lived without food, medical care, or sanitation in lockdown.  Further, even if the

lockdown was fairly restrictive, Plaintiff must clear a high hurdle to demonstrate cruel and unusual punishment.  For example, a survey of Tenth Circuit case law reflects that most 23-hour lockdown programs are not extreme enough to violate the Eighth Amendment.  *See Ajaj v. United States*, 293 Fed. App'x 575, 582–84 (10th Cir. 2008) (finding conditions such as "lock-down for 23 hours per day," "limitations on...access to telephones," and "limited ability to exercise outdoors" did not, individually or in concert, amount to an Eighth Amendment violation); *Hill v. Pugh*, 75 Fed. App'x 715, 721 (10th Cir. 2003) (finding no cruel and unusual punishment where inmate was "isolated in his cell twenty-three hours a day for five days a week and twenty-four hours the remaining two days"); *Silverstein v. Fed. Bureau of Prisons*, 559 Fed. App'x 739, 755 (10th Cir. 2014) (finding no violation where plaintiff ate alone, had no phone calls or face-to-face interaction, and only had 10 hours per week of recreation time); *Smith v. Romer*, 1997 WL 57093, at *2 (10th Cir. Feb. 11, 1997) (finding no violation stemming from 23-hour lockdown with meals in cells, limited vocational, educational, and recreational services, and exercise of one hour per day in cell); *Trujillo v. Williams*, 465 F.3d 1210, 1225 n.17 (10th Cir. 2006) (allegations of limited access to education, employment, religious programming, housing assignment, recreation time and equipment, the telephone, and the commissary did not establish a sufficient serious deprivation).

For these reasons, the Complaint's conclusory allegations regarding cruel and unusual punishment fail to state a cognizable claim.  The Court will dismiss any Eighth Amendment claims.

### C.  The Complaint Fails to Demonstrate a Violation of Religious Freedom

The Complaint also raises claims under the First Amendment's Free Exercise Clause and the RLUIPA.  To state a claim under the First Amendment, the plaintiff must plead facts allowing an inference that the prison regulation at issue "substantially burdened sincerely-held religious

beliefs." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). A prison action that impinges on the First Amendment is nonetheless valid "if it is reasonably related to legitimate penological interests." *Id.* (internal quotation marks omitted). As a result, an inmate "must also plead facts from which a plausible inference can be drawn that the allegedly impinging action was not reasonably related to a legitimate penological interest." *Blair v. Raemisch*, 804 Fed. App'x 909, 916 (10th Cir. 2020) (quoting *Gee v. Pacheco,* 627 F.3d 1178, 1187-88 (10th Cir. 2010)). To state a claim under RLUIPA, a plaintiff must plead that "he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010).

Plaintiff does not allege prison officials impinged on a sincerely held religious belief, describe how he is religious, or demonstrate a substantial burden. The Complaint merely alleges Plaintiff missed one "Kairos reunion" during the 2019 lockdown, and that Kairos is a non-denominational religious service. Congress anticipated that courts entertaining prisoner religious practices cases would accord "due deference to the experience and expertise of prison and jail administrators." *Cutter v. Wilkinson,* 544 U.S. 709, 717 (2005). The prison restrictions must be "more than an inconvenience to one's religious practice." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010) (quotations omitted). For example, the Tenth Circuit has affirmed the dismissal of a free exercise claim where plaintiff's "allegations establish, at the most, a bare desire to hold group gatherings to mark religious holidays." *Burnett v. Jones,* 437 Fed. App'x 736, 745–46 (10th Cir. 2011). Other courts have rejected free exercise claims where a single religious practice was curtailed during a lockdown. *See Booker v. Graham*, 2020 WL 5103845, at *3 (2d Cir. Aug. 31, 2020) ("[W]e have never held that a prison has an obligation to provide religiously

compliant meals during a facility-wide, safety-motivated lockdown"); *Lunsford v. Hall*, 2016 WL 4801626, at *4 (M.D. Tenn. Sept. 14, 2016) (noting "a one-time inability to attend a worship service due to a prison lockdown was a minor infringement on" religious freedom).  Based on this authority, and because Plaintiff provides no information about alternative ways to worship during lockdown, the Court concludes the Complaint fails to state a claim under the First Amendment and the RLUIPA.

The Court will dismiss the Complaint under 28 U.S.C. § 1915(e).  The Tenth Circuit counsels that "if it is at all possible that [the *pro se* inmate] can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend."  *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990).  Leave to amend presents a close call in this case, but the Court finds no harm in following the general rule and allowing Plaintiff to file one more pleading. Plaintiff may file an amended complaint within thirty (30) days of entry of this ruling.  If Plaintiff declines to timely amend or files an amended complaint that fails to state a claim, the Court may dismiss the case with prejudice and without further notice.

**IT IS HEREBY ORDERED** that Plaintiff William McGhee's Complaint (**Doc. 1**) is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and **Plaintiff may file an amended complaint within thirty (30) days of entry of this ruling.**

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE